### OF THE

## STATE OF CONNECTICUT,

### IN NOVEMBER TERM, 1815.*

## Shepard *against* Hawley and Loomis.

THIS was an action of *assumpsit* against the defendants as indorsers of a promissory note. The cause was tried at *Hartford, February* term 1815, before *Trumbull, Baldwin,* and *Ingersoll,* Js.

On the trial, it appeared that the note was made payable to *Hawley* and *Loomis,* and by them indorsed. The first ground of defence was, want of notice of non-payment. The only evidence of notice was an acknowledgment at the bottom of the note in these words : " Due notice was given me

*Where a note or bill is made payable to two or more persons, and by them jointly indorsed in their individual names, each is entitled to notice of non-payment.*

Therefore, an acknowledgment of due notice by one will lay no foundation for an action against all.

Where the defence to an action on note was fraud in obtaining it, the defendant stated, that the note was given as security for a debt due from him to the plaintiff in lieu of certain accepted drafts, which the plaintiff was to give up on receiving the note, but which he retained for several months afterwards, and then, having received a payment thereon from the acceptor, and given him a receipt in full, gave them up with the acceptances erased ; held that proof of these facts was relevant to establish the defence.

* Edmond and Ingersoll, Js. were absent, during the whole of this term, from indisposition.

*Hartford,*
November,
1815.

Shepard
*v.*
Hawley.

as indorser on this note. *A. Loomis.*" The defendants contended, that notice to *Loomis* alone was not sufficient. But the court instructed the jury, that notice to one indorser on a note executed to two or more jointly, and indorsed by all, is legal notice to all the indorsers ; and that the acknowledgment by one only that he has received such notice, is good evidence of the fact.

The other ground of defence was fraud in obtaining the note. The defendants stated, that this was one of two notes put into the plaintiff's hands by *Loomis* for the payment of a debt which he owed the plaintiff, and for which the plaintiff then held *Loomis'* drafts on *Reuben Ward* of *New-York,* which had been accepted ; that the understanding between *Loomis* and the plaintiff was, that the plaintiff, on reception of the notes, should deliver up to *Loomis* the drafts, with the acceptances on them ; that at the request of the plaintiff, *Loomis,* in pursuance of such agreement, sent the notes to the plaintiff at *New-Haven,* who, on the 31st of *August* 1813, received them on said terms, but omitted to deliver the drafts to *Loomis* at that time ; that *Loomis* applied for the notes and drafts several times afterwards to the plaintiff at *Hartford,* who refused and neglected to deliver them up until the 27th of *November* 1813, when he sent the drafts to *Loomis* with the acceptances erased ; previous to which the plaintiff had received from *Ward* a payment on the drafts, and given him a receipt in full, without the consent or knowledge of *Loomis ;* and that *Loomis* refused to accept the drafts when so sent, and had never received them. To prove this statement, the defendants offered the deposition of *Ward,* and the testimony of sundry competent witnesses. The plaintiff objected to the admission of the evidence offered on the ground of irrelevancy. The court decided, that the same was irrelevant, and excluded it, except so far as it respected the payment of any sum of money on the drafts, which ought to be applied on the note.

The plaintiff having obtained a verdict, the defendants moved for a new trial on both grounds ; and the questions arising on such motion were reserved for the consideration and advice of the nine Judges.

*E. Huntington* in support of the motion. 1. The general rule of law is, that one joint-tenant, or person jointly inter-

*Hartford,*
November,
1815.

Shepard
*v.*
Hawley.

ested with another in any property, can of himself do no act which shall bind the other, unless it be *for his benefit.* *Rud* v. *Tucker, Cro. Eliz.* 803. *Right* d. *Fisher & al.* v. *Cuthell,* 5 *East* 494, 498. 3 *Bac. Abr.* 690. (*Wils.* edit.) *Chitty on Bills* 32. By the law merchant, one partner may accept or indorse for the firm such bills as concern the partnership ; but even among partners the act of one on his private account, though in the partnership name, will not bind the other. In this case, there is no pretence of a partnership. The note being payable to *Hawley* and *Loomis,* both indorsed it, each in his own name, and on his own account. In this act, one neither had, nor claimed to have, authority to bind the other. Why, then, should notice to one affect the other? If *Loomis* could not, by his indorsement, bind *Hawley,* could he make an acknowledgment of notice which should bind him? But, it is to be remarked, that *Loomis* does not profess to acknowledge notice for *Hawley.* He says, due notice was given to *him* as *indorser ;* not to him and *Hawley* as indorsers. Now, admitting that the defendants as to this transaction were partners, and that one partner may acknowledge notice for the rest ; yet here was an acknowledgment made by one partner in his individual capacity, and not in the partnership name, nor purporting to be on the partnership account. If the charge to the jury in this case be law, one of the indorsers may at any time, by his own fraudulent act, render the other liable on an indorsement from which he has long been discharged by the laches of the holder. Not a *dictum* is to be found in support of such a doctrine.

2. The facts stated by the defendants on the trial, and offered to be proved, would shew that the plaintiff became possessed of the note under conditions which he had not complied with, and consequently that he had no right of action upon it. The facts being relevant, the evidence to support them ought to have been received.

*T. S. Williams* and *J. Trumbull,* contra, 1. relied upon *Carvick* v. *Vickery, Doug.* 653, 4. n. as an authority to shew, that joint payees and indorsers of a bill are partners as to that transaction, and are liable to be treated as such. Notice to one member of a firm is notice to the whole partnership. *Alderson* v. *Pope,* 1 *Campb.* 404. n. So, if seve-

*Hartford,*
November,
1815.

*Shepard*
*v.*
*Hawley.*

ral are jointly bound to do an act upon notice to them, no-
tice to one is sufficient. 3 *Com. Dig. tit.* Condition. (L. 9.)
5 *Com. Dig. tit.* Pleader. (C. 71.) So, where several are
jointly liable to an attorney for business done, the delivery
of a copy of the bill to one of them is sufficient as to all.
*Crowder & al.* v. *Shee,* 1 *Campb.* 437. In analogy to the
doctrine for which we contend, it is settled that an acknowl-
edgment by one joint debtor of a debt barred by the statute
of limitations, takes the case out of the statute. *Whitcomb*
v. *Whiting,* *Doug.* 652. *Smith* v. *Ludlow,* 6 *Johns.* 267.
2 *Wms. Saund.* 64. *b.* n.

2. If the notes were valid originally,—not vitiated by
fraud or illegal consideration,—the right of property became
vested by the delivery to the plaintiff, and the subsequent
transaction could not avoid them. If the drafts have been
retained by the plaintiff contrary to his agreement with
*Loomis,* he is liable to *Loomis* ; but his right of action on the
notes is unimpaired.

SWIFT, Ch. J. In this case, it is contended, that the
joint indorsement of a negotiable note, payable to two or
more promisees, constitutes the indorsers partners in that
transaction, and that notice of the non-payment of the note
to one, is notice to both, as in the case of partners. The
only authority to this point is the case of *Carvick* v. *Vickery,*
*Doug.* 653, 4. n. It is true, there the court of King's Bench
granted a new trial on that ground ; but on the trial of the
cause, Lord *Mansfield* permitted the defendant to prove the
usage, and the jury declared they knew the usage to be
otherwise, and found a verdict accordingly. This case,
then, cannot be considered as an authority ; and we are at
liberty to settle the question on principle.

Where there are two or more promisees in a negotiable
note, it is necessary that each should indorse it, in order to
transfer it ; but such joint act, from the nature of the thing,
can no more constitute them partners than any other joint
transaction. The legal effect of such indorsement is to make
them all liable to the indorsee, on failure of the payment of
the note, if due notice is given them ; but, there is no reason
for saying that such an act amounts to an agreement that
they will be liable as co-partners with respect to notice ; for
this is to extend the terms and nature of the contract. Such

construction ought not to be given to a contract, if it be unnecessary; for it may subject the parties to inconvenience. In the case of partners, as all have a joint interest, notice to one is sufficient; for he may withdraw the effects of the company, and pursue all the remedies to which they are entitled; but where they are merely joint indorsers, no co-partnership actually existing, each may have a separate interest, both as to withdrawing effects, and pursuing legal remedies. The consequence then might be, that by giving notice to one indorser only, the others might lose their claims against those that are liable to them. Cases also may occur where the liability on the indorsement has been discharged by want of due notice, or some other laches, yet one of the indorsers, who may be a bankrupt, will have it in his power, by his acknowledgment of notice, to revive such extinguished liability, without the knowledge or consent of those who are thus rendered chargeable. This can easily be avoided by requiring notice to be given to all the joint indorsers to whom the holder of the note intends to look; and then every one can protect his separate rights.

The defendants also contended, that the plaintiff obtained the note by fraud, and offered testimony to prove the fact, which the court rejected as irrelevant. The facts stated constituted a fraud; the evidence offered was pertinent to prove them; and it ought to have been admitted.

In this opinion TRUMBULL, SMITH, BRAINARD, and BALDWIN Js. severally concurred.

GODDARD, J. I am of opinion that the direction to the jury was wrong. If the principle laid down is correct, it must be applied to all cases where by the law merchant notice of the dishonour or non-payment of a bill of exchange or promissory note is necessary. This rule, if adopted, it is obvious, may open a door to fraud, and create or continue responsibilities, which parties never meant to assume. A negotiable bill or note having been dishonoured, and due notice having been given, a right of action has accrued to the holder, and he may then hold the note or bill for an indefinite time without enforcing his demand by suit. *A.* and *B.* are joint promisees in a note. They indorse it to *C.* Payment is refused, when at maturity. *A.*, who is the friend of

*Hartford,*
November,
1816.

Shepard
*v.*
Hawley.

*Hartford,*
November,
1815.

*Shepard*
*v.*
Hawley.

*C.*, is embarrassed for funds. Notice is given to him, but no notice is given to *B.*, who is responsible. *C.* is content to suffer his money to remain on interest; and out of favour to *A.*, he neglects to collect his money until *A.* fails. He then commences his suit against *B.* without notice, and collects his debt after the lapse of years, during which time *B.* has supposed that the bill or note had been paid at maturity. *B.* may have had funds in the hands of the drawee to pay his part of the bill or note, which he has failed to collect, supposing they had been applied to the payment of this bill or note. Prior indorsers, who would have been liable to him, have not been notified, and he has lost his claim on them. Or if no notice was ever in fact given, and he had been discharged from the claim, it is in the power of *A.*, who has become bankrupt, to revive or create a claim against him, by acknowledging that notice had been given to him. A principle so dangerous ought not to be adopted, unless settled rules of law imperiously demand it.

I have not been able to find any decision which supports such a principle. I find principles opposed to it.

What is the object of requiring notice? To enable the drawer or indorser to withdraw his effects, which, in contemplation of law, are in the hands of the drawee; to enable the indorser of the note to obtain payment of the maker; to notify others who may be liable to him. It is always presumed that the maker of a bill has effects in the drawee's hands, and that the indorser has given value for it, and that each may sustain a loss by want of notice. It is on this principle that notice is required. *Bickerdike* v. *Bollman*, 1 *Term Rep.* 410. *Vere & al.* v. *Lewis & al.* 3 *Term Rep.* 182. *Whitfield* v. *Savage*, 2 *Bos. & Pull.* 280, 281. *Chitty on Bills* 162. In the case of *French* against the *Bank of Columbia*, reported in 4 *Cranch* 154. Chief Justice *Marshall*, in delivering the opinion of the court, says, " Why is it that notice must immediately be given to the drawer that his bill is dishonoured by the drawee? It is because he is presumed to have effects in the hands of the drawee, in consequence of which the drawee ought to pay the bill, and that he may sustain an injury by acting on the presumption that the bill is actually paid. The law requires this notice, not merely as an indemnity against actual injury, but as a security against a possible injury which may result from the laches

of the holder of the bill. To this security, then, it would seem, the drawer ought to remain entitled, unless his case be such as to take him out of the reason of the rule." It is apparent that none of these ends of notice are attained by notice to one only of two or more joint indorsers or drawers.

But the principle contended for is attempted to be maintained by considering joint indorsers or drawers as partners *quoad hoc.*

To constitute a partnership, there must be either an agreement to share in profit and loss, or two or more must hold themselves out to the world as partners. The case in question does not state the defendants to be partners by any such agreement. Have they held themselves out to the world as partners? There is nothing on the face of this note, or the indorsement, which has any tendency to hold out to the world such an idea; and I believe it is against the universal sense of the mercantile world so to consider them. Partners usually transact business under some name. This note is payable to *Asahel Loomis* and *Samuel Hawley,* and by *Asahel Loomis* and *Samuel Hawley* indorsed.

In cases of *actual* partnerships, it is said, that he who draws, accepts or indorses a bill for himself or partner, should always express that he does so for himself and partner, or it will be doubtful whether his partner is bound. *Chitty on Bills* 35. and the following cases there cited: *Pinkney* v. *Hall,* 1 *Salk.* 126. S. C. 1 *Ld. Raym.* 175. *Smith* v. *Jerves & al.,* 2 *Ld. Raym.* 1484. *Carvick* v. *Vickery, Doug.* 653. *The King* v. *Wilkinson,* 7 *Term Rep.* 156. *Meux & al.* v. *Humphry,* 8 *Term Rep.* 25. *Lepine & al.* v. *Bayley,* 8 *Term Rep.* 325. If several persons employ one factor, and he draws a bill on them all, the acceptance of one will not bind the rest. *Bull. N. P.* 279. *Chitty on Bills* 34, 5.

But the case of *Carvick* v. *Vickery, Doug.* 653. n. is relied on as an authority to support this case. In that case, *John Maydwell* and his son, *John Maydwell,* drew a bill on *Abraham Vickery,* payable to their own order, and the son only indorsed it thus : " *Jn. Maydwell.*" In an action by the indorsee against the acceptor, the court of *King's Bench* decided, that the indorsement was good, and said, that it was better that the father should suffer by the act of the son, than that the world, who would collect the condition and relation of the parties to each other from the face of the bill itself,

should be deceived by it ; and Lord *Mansfield,* to maintain the position he had taken, denominated the promisees in that case partners to that particular transaction, although the case stated that they had no other connexion in business than the drawing of that bill.

But it is remarkable, that in the trial of that very case afterwards, Lord *Mansfield,* upon objection, admitted evidence to prove, that by the universal custom and usage of merchants and bankers, such indorsement was held to be bad ; and the jury *unâ voce* said they wanted no evidence to prove that ; they knew it to be as stated ; and gave a verdict for the defendant.

Let it be remarked, that the rule established by the court was for the benefit of trade, founded on the supposed law merchant, and opposed to the general doctrine of the common law that one joint tenant of a personal chattel can do no act to affect his co-tenant.

But it is said, that admitting one joint promisee cannot indorse for himself and the other, yet that having done so, he shall be responsible for all the consequences o fthis last joint act ; and on this ground notice to one ought to be considered as notice to both. I answer, that if one cannot indorse for both by the law merchant, they are in no sense partners. They are not supposed to have drawn upon the credit of joint funds ; they have not held themselves out to the world as partners ; the holder has not been deceived ; their acts have had no tendency to deceive the world. The holder will know, that they may draw or indorse upon the credit of separate funds, and will perceive the importance of notice to each to enable each to secure himself in relation to others, and to have all the security to which he is entitled by law.

But it is said, that if a promise is made to several persons to pay on request, a request to one is sufficient. So notice to one member of a firm is notice to all. So where by statute an attorney is obliged to present his bill one month before suit, several underwriters being holden to pay, presenting to one is sufficient to maintain his action. In all these cases, it is presumed that if one person liable to pay money is called on to do so, he will notify all who are liable to contribute a part of it ; and if this is not done, they are

only subject to the inconvenience of a suit for money without being first notified.

Cases arising under the statute of limitations have also been cited, where an acknowledgment of one joint promisor has been held sufficient to take a case out of the operation of the statute) as to him and his joint promisor. These cases are not analogous. Slight evidence has been held sufficient to operate as a waiver of that statute, where courts have been satisfied that the debt had never been paid ; and whether they have gone too far or not, it is not now necessary to enquire. They do not apply to the case under consideration.

I am of opinion, that it will be most conducive to justice, most consonant to mercantile usage, and the principles of law requiring notice, that all who may be affected by it, should have notice of the dishonour of a bill or note ; and that in this case, a new trial ought to be granted.

HOSMER, J. gave no opinion, having been of counsel in the cause.

New trial to be granted.